**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

UNITED STATES OF AMERICA,

                Plaintiff,

vs                                    Cr. No.   20-20517
                                      HONORABLE DENISE PAGE HOOD

STEPHEN SHIPPS,

                Defendant.
_____/

## DEFENDANT'S SENTENCING MEMORANDUM

On November 6, 2021, Defendant Stephen Shipps pleaded guilty to Count 2 of the Indictment, "Transportation of a Minor to Engage in Sexual Activity," in violation of 18 U.S.C. § 2423(a).  The offense occurred almost twenty years ago, and pertains to Mr. Shipps engaging in sexual activity with a 16 year old violin student of his, during a trip to New York.  Mr. Shipps is scheduled for sentencing on April 14, 2022, at 11:00 a.m.

In the Rule 11 Plea Agreement, the parties agreed on the scoring of the United States Sentencing Guidelines, resulting in an agreed guidelines range of 57-71 months.  No objections to the Presentence Investigation Report have been filed.

This memorandum addresses what level of penalty is appropriate in this case.  For the reasons discussed below, and notwithstanding the sentencing guidelines, defense counsel asks the Court to consider a sentence that does not require incarceration or, if the Court determines that incarceration is necessary, a modest carceral sentence.  Counsel urges that the purposes of sentencing set forth in

18 U.S.C. § 3553 can be met under conditions of community supervision that may include home confinement, community service, making restitution, and the like. *See, e.g., Gall v. United States*, 552 U.S. 38, 48-49 and fn. 4 (2007) (recognizing in the "departure" context, which this case is not, that probation involves loss of liberty, is "not granted out of a spirit of leniency," and "can have a significant impact on that person and society.").

## BACKGROUND

*Personal*.  Mr. Shipps is 69 years old.  An only child, he was born and raised in Illinois and Indiana by his mother and father, in a household where all of his material and emotional needs were met. He graduated from Indiana University in 1973 with a Bachelor of Music degree and a "Performer's Certificate."  He received his Masters of Music degree in 1977, again from Indiana University.  Retired since 2018, his entire working life was as a very skilled and highly-regarded violinist, both as a performer and instructor.  (More on this below.)

Mr. Shipps has been married for over 46 years.  He and his wife raised two children.  Mr. Shipps' 37 year old son, who has been in recovery for three years from serious alcohol and controlled substance addictions, lives with Mr. Shipps and his wife.  Their relationship is very close.  His 41 year old daughter lives in Indianapolis with her children (Mr. Shipps' grandchildren).  Mr. Shipps' relationship with his daughter has been severely strained on account of this case, and she has expressed her profound disappointment in his actions directly and strongly.  That said, in a recent visit she reaffirmed her desire to maintain a loving

relationship with her father, and for her children to maintain a loving relationship with their grandfather.

In terms of his health, physically, Mr. Shipps is relatively healthy, but he takes medication to control cholesterol and arthritis.  Emotionally, he has treated with a therapist and psychiatrist since 2013 for anxiety and depression, for which he takes medication.  An admitted alcoholic, Mr. Shipps has been sober since 2009.  He attends AA daily in support of his sobriety, and continues to meet regularly with his AA sponsor.  Over the past 13 years, he has become a leader in his AA community, helping run meetings and sponsoring others in their recovery.

Socially, since 2007 Mr. Shipps has been very involved in his church, which involvement became even greater since his recovery began in 2009.  His activities primarily include helping direct the church's 12-step programs[1], but he is involved in other ways as well, including as a violinist at services, worship leader, and regular participant in bible studies.

Mr. Shipps has been and remains a pillar of support within his family.  His wife, who retired in 2013, relies on him for emotional as well as practical support at home.  Mr. Shipps' son relies very heavily on his guidance and support (emotional and financial) in his own ongoing (and still relatively recent) recovery efforts.  And of further immediate concern, Mr. Shipps' 92 year old mother suffers from dementia.  Although she is cared for in an assisted living facility in Indiana, Mr. Shipps is her guardian and holds her power

---

[1] The church's 12-step programs address various addictions beyond just alcohol.

of attorney.  He frequently visits her in Indiana, to spend time and oversee her care.

*Employment.*  The instant offense cannot be understood without an understanding of Mr. Shipps' professional background.  Following his graduation from Indiana University in 1973, Mr. Shipps was employed by various orchestras and symphonies as a professional violinist. Between 1973 and 1980, he had stints with the Cleveland Orchestra, the Dallas Symphony, the Dallas Opera, and finally the Omaha Symphony where he was the concertmaster.

While a performance professional, like many other professional musicians, Mr. Shipps supplemented his income by giving private lessons to violin students.  In 1980, he changed his career path entirely from full-time performer to full-time teacher, accepting a position as violin instructor at the prestigious North Carolina School of the Arts.  In 1989, he joined the faculty at the University of Michigan School of Music, Theater and Dance (SMTD), where he remained until he retired in 2018 shortly after the instant investigation opened.  While at the SMTD, Mr. Shipps achieved tenure in 1994, became a full professor in 1999, served as Associate Dean for Academic Affairs for the SMTD from 2001-2006, and was the chair of the "String Department" from 2015-2018.  During this same time, Mr. Shipps became affiliated with various international music academies, including the International Music Academy of Pilsen (IMAP) in the Czech Republic, the Liberec International Violin Academy (LIVA) in the Czech Republic (which he helped to found), and the Cambridge International String Academy at Trinity College, Cambridge University, in the United Kingdom (which he also helped to found).

Throughout his more than 30 years in academia, Mr. Shipps continued to perform as a guest violinist at various national and international venues.  He also had a prolific recording career, appearing on numerous albums and CDs, including 12 that went platinum or gold and one on which he shared a Grammy nomination.

While Mr. Shipps was highly regarded throughout his professional life as a performance virtuoso and instructor, unbeknownst to most that life came at a terrible cost.  As an emerging orchestral violinist in 1973, Mr. Shipps found that the classical music performance culture was infused with substance use and abuse, and participation in that culture was encouraged.  Mr. Shipps, who had begun drinking at age 17, easily took to this aspect of the culture, soon developing a deep-seated alcoholism.

 After shifting his career to teaching, he encountered another toxic culture.  From the time he was a high school student himself, Mr. Shipps was aware of the fact that various of his teachers had sexual relationships with students.  These inappropriate, and in some cases illegal, relationships were often open secrets, the regular recurrence of which was accepted with little more than eye-rolling. Regrettably, Mr. Shipps, whose students often were adolescents and primarily female, sometimes joined that culture as well.

It would be wrong to suggest that Mr. Shipps' alcoholism "caused" him to have improper sexual relationships; the vast majority of alcoholics do not have sexual liaisons with underage adolescents. However, it would be equally shortsighted to deny the potentiating connection between the two, and to ignore the reality that chronic substance abuse and inappropriate sexual relations frequently co-

5

occur.   In this case, that destructive combination plagued Mr. Shipps

for a great many years.   Thankfully, the improper sexual

relationships ended with the victim in the instant case, in the

summer of 2002; he has not engaged in such a relationship since.   It

took a few more years for Mr. Shipps to get control of his

alcoholism, but as reported above he finally became sober in 2009.

Notably, Mr. Shipps reformed himself independent of, indeed many

years before, the investigation that resulted in this case.

   *Community support.*   Contemporaneously with the filing of this

sentencing memorandum (or as contemporaneously as possible),

undersigned counsel submits numerous letters in support of Mr.

Shipps.   The writers include former students, professional

colleagues, members of Mr. Shipps' church, associates from AA, a

couple of close friends, and Mr. Shipps therapist.   Almost all of the

letters relate the writer's knowledge of and personal experiences

with Mr. Shipps that post-date the offense but pre-date this

investigation.   All acknowledge that this case is a serious one, with

a real victim and real harm.   None excuse Mr. Shipps' behavior in

connection with that victim.   Very rarely is there a specific plea

for leniency.   Rather, the letters typically conclude with the simple

request that, in fashioning an appropriate sentence, the Court

consider the remarkable turnaround that Mr. Shipps has made in his

life and the positive impact he has had and continues to have on

others' lives as a result of that turnaround.

   There are two predominant and unifying themes in the letters.

First, the writers describe Mr. Shipps' reformation, their first-hand

witness to his commitment to his faith, his sobriety, and service.

Second, consistent with the first theme, the writers confirm first-hand experiences with his empathy, selflessness, and commitment to helping others (including themselves).  These letters are powerful attestations to the fact that Mr. Shipps today is not the man he was in 2002, and that his efforts to make himself a better man are sincere and of long standing.

It is telling that the letters come from persons in all walks of Mr. Shipps' life.  However, the letters from former students (women and men) and their parents are particularly compelling in the present context, stressing not so much the quality of Mr. Shipps' instruction as his sincere concern and support for the student's entire development at an incredibly formative time in the student's life.  Said one former female student,

> During my time at Michigan, I was taking an extremely rigorous course load due to the nature of the dual degree program I was in.  I was able to pursue both my engineering degree as well as violin, thanks to the overwhelming support from Mr. Shipps.  * * *  The fact that Mr. Shipps not only encouraged, but went out of his way to support numerous students in the studio who had multiple passions and interests speaks further to his ability to prioritize what is best for his students.  In fact, our studio was notorious in the music school for being the studio of multi-talented people; this would not have been possible without his genuine support.

Said another female student,

> When I was a junior I began to suffer from chronic debilitating headaches.  I was going through thousands of dollars' worth of medical testing and I was so sick that I wasn't performing at my best.  Mr. Shipps offered the encouragement I needed to seek out a higher level of treatment * * * .  He showed interest in my wellbeing by advocating for me with class loads, financial matters, and dynamics with other professors within the music department.  I always felt as though Mr. Shipps was invested in me as a whole person, not just as a musician, all while not crossing personal boundaries.

Universally, the letters from students and parents describe Mr. Shipps as treating them respectfully and appropriately—"not crossing personal boundaries," as the above-quoted letter put it.

From these letters, the Court gains important insights into Mr. Shipps' character as he stands before you today.  While a person's rehabilitation does not erase the sins of the past or the harms caused by those sins, the Court knows well that she sentences the offender as well as the offense.  The "offender" who will appear before you for sentencing has been a much changed and better man for many years.

*Instant case.*  Throughout this case, the defense has cooperated with the Government in protecting the victim's privacy by not discussing in the public record details of the investigation that might reveal the victim's identity.  Consistent with that practice, undersigned counsel will simply refer the Court to paragraph 11 of the Presentence Investigation Report, which describes the relevant facts and context of the offense, and which description Mr. Shipps adopts.  The only fact that counsel wishes to add is that the sexual relationship lasted for only a few months, and ended in mid-summer 2002 as noted above.  (This is not to minimize the nature or seriousness of the offense or to suggest that an improper relationship is any more acceptable because it was short.)

This case represents Mr. Shipps' only involvement with the criminal justice system.  Following his release on personal bond in November 2020, he has been supervised by the same pretrial services officer.  To counsel's knowledge, Mr. Shipps' behavior on pretrial release has been exemplary.  As the Court knows, Mr. Shipps pleaded

8

guilty.  His acceptance of responsibility has been sincere and his remorse is deeply felt.  He had no desire to cause further distress to the victim by contesting the charges.  He fully agrees that he should make restitution for the harm he caused her.

## ARGUMENT REGARDING SEC. 3553(A) FACTORS, AND FOR VARIANCE

The Court is thoroughly familiar with the factors it is to consider in sentencing Defendant, pursuant to 18 U.S.C. § 3553(a), including the directive that the Court impose a "sentence sufficient, but not greater than necessary" to accomplish the objectives of sentencing.  Counsel will address each of the factors relevant to this case, in order.

1. *Nature and Circumstances of the Offense and the Offender.*

As noted, Mr. Shipps is a 69 year old man before the Court for sentencing on his first criminal conviction.  The offense was serious:  society cannot countenance an adult taking advantage of minors for sexual gratification.

That said and as noted earlier, the Court is to sentence not just the offense, but also the offender.  The numerous letters submitted to the Court, and described above, demonstrate that Mr. Shipps is a good man who has done many good things and had many positive impacts on others over his life and career, notwithstanding this offense.  And in particular over the past 20 years, Mr. Shipps has striven mightily, and successfully, to address the flaws and weaknesses that caused him to commit the offense.  The letters of support attest to Mr. Shipps' character and value to society, this offense notwithstanding.

Mr. Shipps also is remorseful.  It can be difficult to demonstrate remorse in a concrete fashion, but one way is to try and make things right.  In this case, he has done what he can, pleading guilty and accepting responsibility, sparing the victim a trial, and he will make restitution for the harm he has caused.

Another relevant offender characteristic is a person's family responsibilities, and the person's history of taking care of those responsibilities.  Mr. Shipps is of course an important part of his wife's support system.  But additionally he is a <u>critical</u> part of his son's support system in his son's recovery, and his 92 year old mother's support system as she struggles with end-of-life dementia.

The Court may note that some characteristics of Mr. Shipps discussed above are mentioned in the Sentencing Guidelines.  For instance, an offender's history of "good works" is discussed in USSG §5H1.11 (Policy Statement).  Similarly, a discussion of "Family Ties and Responsibilities" is found in USSG §5H1.6 (Policy Statement).  For each, the policy statement provides that such characteristics are "not ordinarily relevant in determining whether a <u>departure</u> may be warranted."  (Emphasis supplied.)  However, in advocating for a non-carceral sentence or only modest incarceration, the defense is not seeking a "departure," a rather narrow Guidelines concept, but rather a variance from the Guidelines, which is fully within the Court's ability to grant.  As recognized in the PSR (par. 67), any term of incarceration below the Guidelines or, indeed, probation, are authorized sentences in this case.  Therefore, the Policy Statements cited above are inapposite here.

Similarly, the payment of restitution required by law may not be considered in determining whether to grant a downward departure from the Guidelines.  See U.S.S.G. §5K2.0(d)(5).  Again, however, in determining whether to grant a variance (as opposed to a "departure") from the Guidelines, 5K2.0(d)(5) does not prevent the sentencing court from taking into account a defendant's demonstrated remorse by his commitment to promptly pay restitution.  Indeed, since time immemorial sentencing judges have assessed a defendant's acknowledgment of wrongdoing and remorse for that wrongdoing when imposing sentence.

The Court's sentence, then, does not issue just with respect to the offense and Mr. Shipps' participation in it, but rather in view of the entirety of his life.  In determining what is appropriate for a particular offender within the guidelines range, the Court is expected to, and should, take note of the offender's post-offense reformation and his overall positive contributions to society, just as it does the negative impact of the criminal behavior.  The Court is expected to consider what other important obligations the offender has in his life and how he has met them historically.  The Court is expected to gauge the offender's remorse and related commitment to take the appropriate lessons from his conviction.

In this case, Mr. Shipps demonstrated long before the investigation commenced that he took the appropriate lessons from his actions.  He changed his life on his own, and his post-offense conduct has been indisputably beneficial to his students, family and various communities.  His remorse and commitment to do better is patent.  Imprisoning Mr. Shipps removes him from the communities—

family, church, those seeking recovery--that need him and benefit

substantially from his service.  Individually or in the aggregate,

these observations militate against imprisonment.

2.  *"Just punishment" that promotes respect for the law.*

As recognized by Gall, supra, any substantial restriction of

freedom, even probation, constitutes "punishment" when considering

what form of punishment is appropriate in a given case.  In

determining what provides a sufficient quantum of "just punishment,"

the Court should consider penalties already incurred and to be

further incurred by the offender.  In this case, Mr. Shipps already

has suffered a severe penalty in being convicted of a felony.

Further, well before the indictment came down, he was forced to

resign under fire as professor at the SMTD on account of the

investigation that ultimately gave rise to the charges.  He will be

required to register as a sex offender for life.  The public nature

of the investigation and this case has subjected him to ridicule and

contempt.  This all may be justified, but it should be recognized

that the penalty for his actions already has been severe, and

whatever additional consequences and punishment are imposed by this

Court, regardless of whether it involves incarceration, will be

sufficient, fair, just, and one that affirms respect for the law.

3.  *Afford deterrence/protect the public.*

"Deterrence" is a concept usually applied to the anticipated

impact of a sentence on others who might contemplate similar criminal

activity.  It is commonly observed that deterrence has more to do

with the "certainty" of punishment rather than its "severity."

Regardless of the sentence imposed by the Court, it seems likely that

a similarly situated person knowing of this case would find sufficient deterrent effect simply by Mr. Shipps' ordeal, its felony outcome, and the additional consequences noted above.

"Protection of the public" usually refers to the impact of sentence on the defendant himself, and future recidivism.  Again, Mr. Shipps is 69 years old, which by itself makes him statistically unlikely to recidivate:  studies consistently have shown that recidivism declines significantly as age increases.  *See, e.g., Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, at 12, 28 (2004) (rate of recidivism of persons between the ages over 50 in criminal history category I measured at 6.2%).[2]  Beyond mere statistics, Mr. Shipps has gone 20 years without reverting to the behavior that underlay this offense.

In the PSR (par. 83), the writer notes that "while a custodial sentence along with supervised release may provide some protection for the public, the instant offense occurred 20 years ago and there have been no allegations since."  The writer goes on to describe other measures that are relevant to protection of the public, including compliance with sex offender registry provisions, limiting and monitoring of Mr. Shipps' computer use, requiring Mr. Shipps to complete sex offender evaluations and participation in any recommended treatment modalities, and limiting him from unsupervised contact with minors.  All of these goals can be achieved in a community setting.

---

[2] https://www.ussc.gov/sites/default/files/pdf/research-and-publications/research-publications/2004/200405_Recidivism_Criminal_History.pdf

4.   *Provide needed educational/vocational training, health care*.

As noted in the PSR (par. 84) and further described above, Mr. Shipps has more than adequate educational training.  In terms of health care, Mr. Shipps is stabilized in his recovery with his daily AA involvement and his many-years devotion to that regimen.  His anxiety and depression are well managed by his eight years in therapy and medication.  In a prison environment, this regular care may not be readily available.  A sentence that keeps him in the community best assures that these systems remain in place.

5.   *The kinds of sentences available*.

As noted in the PSR (par. 85), in this case available sentences under the statute include probation with conditions, or traditional incarceration for up to the statutory maximum term.  While an alternative to imprisonment would require a variance from the guidelines, such a sentence is no less "available" for that reason.  Therefore, a sentence that does not impose straight imprisonment is an available sentence.

6.   *Avoid unwarranted sentencing disparities*.

In the PSR (par. 86), the writer notes that persons found guilty of similar conduct "have generally fallen within the calculated sentencing guidelines range."  Counsel has no data or reason to counter that statement, but nonetheless this seems to be a *sui generis* case.  What makes it unusual is not just how long ago the conduct occurred, but also the strides Mr. Shipps has taken to change his behavior, well prior to and independent of this case.  Therefore, counsel does not believe that a non-carceral sentence or one that

imposes only a modest level of imprisonment would constitute an "unwarranted sentencing disparity."

### CONCLUSION

Stephen Shipps stands convicted of a very serious felony. When it occurred 20 years ago, as accomplished as he was professionally, Mr. Shipps was a drunk, which by itself perhaps is only unfortunate. To his much further discredit, he also manipulated the victim in this case for his own gratification, and it wasn't the first time. All of this said, it cannot be disputed that he is a much different person now and has been that different person for a long time. He provides critical support to his wife, son and mother, he is faithful to his friends and others entrusted to his care, and he is a stalwart and positive member of his community. He is ashamed and remorseful, while at the same time recommitted to continuing the upright life that characterized him in the many years prior to this case.

The question must be asked, what is gained in terms of the goals of sentencing by incarcerating Mr. Shipps? The goal of deterrence of others would seem to be adequately met already, given the significant penalties Mr. Shipps already has suffered. Mr. Shipps' behavior over the last 20 years demonstrates that he is not a danger to society; to the contrary, he is an important asset. Likewise, his behavior since this offense demonstrates his rehabilitation, which occurred independent of this case. That leaves, as the only remaining goal of sentencing, "just punishment."

In considering what level of punishment is "just," we should recognize that it does not have to come just in the form of incarceration. The alternative of probation with appropriate

15

conditions, including home detention, is available and, as recognized in Gall, supra, constitutes punishment.  Such a sentence would provide a sanction that is proportional to the crime, promotes respect for the law, and allow Mr. Shipps to continue his positive contributions to his family and communities without interruption.  In short, such a sentence will constitute punishment that is "sufficient but not greater than necessary" to satisfy the purposes of sentencing.  Counsel asks that the Court impose that sentence, rather than formal incarceration.

Respectfully submitted

Dated: April 7, 2022

s/John A. Shea
John A. Shea (P37634)
Attorney for Defendant
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that, on April 7, 2022, he electronically filed this Sentencing Memorandum.  Notice of this filing will be sent to all counsel of record by operation of the Court's electronic filing system.

Dated: April 7, 2022

s/John A. Shea
John A. Shea (P37634)
Attorney for Defendant
120 N. Fourth Avenue
Ann Arbor, Michigan 48104
(734) 995-4646
jashea@earthlink.net