UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

        Plaintiff,                           Case No. 20-20517

v.                                        Hon. Denise Page Hood

STEPHEN SHIPPS,                       UNDER SEAL

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

Stephen Shipps was ▮▮▮▮▮ crucial person in young MV-1's life. At age 15, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ ▮▮▮▮ Shipps was her teacher, her mentor, ▮▮▮▮▮▮▮▮▮▮ and her ticket to the world of elite classical music. But instead of guiding her through her development as a violinist, student, and young woman, Shipps coerced her into a sexual relationship that would forever impact her life. There is no way to undo the trauma that Shipps inflicted on MV-1, and there is no telling how her life would have unfolded if Shipps had lived up to the promises he made to her instead of exploiting her. Even more tragically, MV-1 was not the first young violinist that Shipps abused. For decades, Shipps had inappropriate and damaging sexual

1

relationships with his students. Considering the factors codified at 18 U.S.C. § 3553(a), the government asks the Court to sentence Shipps to 68 months in custody.

I. **PROCEDURAL HISTORY**

On November 16, 2021, Defendant Stephen Shipps entered a guilty plea to Count Two of the Indictment, which charged him with transportation of a minor to engage in sexual activity. (Plea Agreement, ECF No. 24, PageID.106). In the plea agreement, the parties agreed that certain guideline enhancements applied. (*Id.*, PageID.112-113). The agreement also stated that "the defendant and the government agree not to take any position or make any statement that is inconsistent with any of the guideline recommendations in paragraphs 8.B, 8.C, or 8.D." (*Id.*, ECF No. 24, PageID.112). Finally, the parties agreed under Federal Rule of Criminal Procedure 11(c)(1)(C) that "the defendant's sentence of imprisonment . . . may not exceed 71 months." (*Id.*, PageID.114).

However, in the PSR, the Probation Department did not apply one of the three enhancements stipulated to by the parties, "because the offense did not involve a victim that 'had attained the age of 12 years

but not attained the age of 16 years.'" (PSR ¶ 62); USSG § 2G1.1(b)(3)(A) (2001). The plain reading of § 2G1.1(b)(3) states that subsections (A)/(B) only apply if (b)(2)—victim under age 16—applies. But the commentary for (b)(3) states that it is intended to "have broad application and includes offenses involving a victim less than 18 years of age entrusted to the defendant." (Application Note 5).

To address the inconsistency between the plea agreement and the PSR, the parties have executed an Amendment to the Rule 11 Plea Agreement. In the Amendment, the parties now stipulate to an enhancement for MV-1's age pursuant to § 2G1.1(b)(2) because MV-1 was 15 years old when defendant began engaging in sexual conduct with her. The parties' Amendment also removes the enhancement for 2G1.1(b)(3)(A).[1] As a result, the government submits to the Court that the appropriate guideline range for the defendant is 57 to 71 months, which is the same range that the parties anticipated at the time of the plea hearing.

II. <u>**STATEMENT OF FACTS**</u>

---

[1] USSG § 2G1.1, Application Note 6, states that if "the enhancement in subsection (b)(3) applies, do not apply . . . § 3B1.3 (Abuse of Position of Trust or Special Skill)."

3

Stephen Shipps is a renowned violinist and teacher. Shipps spent his professional life among the nation's classical music elite. The bulk of his career was at the University of Michigan, where he was ultimately the Chair of the String Department. In the competitive and intense world of classical music, Shipps was a gatekeeper; not only did he teach students, but he had the ability to make or break their careers as violinists.

One such student was MV-1. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ Shipps gave MV-1 violin lessons. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ (PSR ¶ 11).

When MV-1 was 15, Shipps began taking her out of the state ▮▮▮▮▮▮▮▮▮▮▮▮. Their first trip was to ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ on September ▮, 2001. Shipps and MV-1 flew ▮▮▮▮▮▮ and stayed in a

4

hotel. On the last night of the trip, Shipps tried to kiss MV-1 in her hotel room. MV-1 pulled away.

The next month, Shipps took MV-1 on a second trip, this time to ███. They traveled by car and stayed in a hotel. While there, Shipps went to MV-1's hotel room and sat on the side of her bed. Shipps kissed MV-1 for a "long time" (with tongue) and told her that he hoped the kiss would give her inspiration for her performance. ███

███

███

███

███ ███ MV-1 thinks of this October trip ███ as when the sexual relationship and abuse began.

███ MV-1 turned 16. At some point around her birthday, Shipps told MV-1 that he had "looked it up" and that she could now consent to sexual activity. A few months later, Shipps took MV-1 to New York city via Amtrak. They traveled in a sleeper car; ███

███ Before they went

5

to sleep on the train, Shipps instructed MV-1 to masturbate his penis. ▬▬▬▬▬▬▬▬▬▬ ▬▬▬▬▬▬ ▬▬▬▬▬▬▬▬▬▬▬▬▬ For the next several months, Shipps had MV-1 engage in sex acts on a regular basis ▬▬▬▬▬▬▬. Those sex acts included oral sex and digital penetration. At some point, Shipps played a pornographic movie for MV-1 on a VHS tape ▬▬▬▬▬▬▬. The movie depicted a man and a woman engaging in sex.

After the conclusion of the school year, Shipps and MV-1 went to a ▬▬▬▬ upstate New York. Shipps ▬▬▬▬ drove to New York with MV-1. ▬▬▬▬ Shipps had a studio, and MV-1 took lessons from him there. While at ▬▬▬▬, MV-1 confronted Shipps and told him that the sexual relationship had to stop. At first, Shipps honored MV-1's request. But at a hotel on the trip home, Shipps began masturbating his penis while lying in bed under the sheets. MV-1 demanded that he stop, and he did.

Shipps's sexual relationship with MV-1 was coercive and exploitative. In 2001 to 2002, when MV-1 was 15 and 16 years old, ▬

6

. He gave her violin lessons ▇▇▇.

He bought her gifts, and he told her that he loved her. He also told her that the relationship was their "little secret." Shipps had control over MV-1's violin career, ▇▇▇. He told her not to tell anyone about the sexual abuse, and she was terrified that if she did, ▇▇▇ her violin career would be in jeopardy.

### III. SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a)a FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing

disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are evaluated below.

### A. The Sentencing Guidelines Range

Although advisory, the Sentencing Guidelines remain an important factor under Section 3553(a) when determining an appropriate sentence. As the Supreme Court noted in *United States v. Rita*, 551 U.S. 338, 345 (2007), "it is fair to assume that the Guidelines, insofar as practicable, reflect a rough approximation of sentences that might achieve § 3553(a)'s objectives." The Probation Department calculated Defendant's guideline range to be 46-57 months. (PSR ¶ 59). However, in the plea agreement and amendment, the parties have stipulated to guidelines enhancements that result in a sentencing range of 57-71 months. The government respectfully requests a sentence of 68 months.

### B. Nature and Circumstances of the Offense

The nature and circumstances of Shipps's offense are unquestionably serious. He caused lifelong trauma to MV-1. ■

8

███████████████████████████████. MV-1 had complete trust in him. He used this trust to groom her and ultimately coerce her into a sexual relationship. After approximately six months, she summoned the courage to end the relationship, despite her fear that she was putting everything at risk.

MV-1 provided the Court with a victim impact statement. In her statement, she explains that Shipps's crimes ███████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

████████████████████████████████████

9

██████████████████████████████████████

███████████

Shipps's offense was not a single violation of MV-1's trust. Instead, he engaged in a sexual relationship with her from October of 2001 through the summer of 2002. He took her out of state on several occasions and engaged in sex acts with her on two of those trips. But even ████████████████████████ in his practice studio at U of M, MV-1 was not safe. The abuse took place in those places too. The nature and circumstances of the offense weigh in favor of a sentence at the high-end of the guideline range.

### C. History and Characteristics of the Offender

Unfortunately, MV-1 was not Shipps's first victim. According to Shipps, MV-1 was the last student that he exploited through a sexual relationship. But she was far from the first.

On December 10, 2018, the Michigan Daily published an article describing allegations of sexual misconduct stretching back decades. Sammy Sussman, *Former Students bring 40 years of misconduct allegations by SMTD professor*, Michigan Daily, December 10, 2018. Numerous former students came forward and described their

experiences with Shipps. In response to these allegations, U of M placed Shipps on leave that month. On February 28, 2019, Shipps retired from the university.

During the course of this investigation, HSI identified and interviewed many of Shipps's former students. MV-5, MV-6, MV-7, MV-8 and MV-9 reported that Shipps had sex with them when they were under 18 and students in Nebraska or North Carolina. The sex was coercive, and in some instances, involved the use of alcohol and marijuana. These teenagers studied violin under Shipps, and babysat his young children.

At the age of 16, MV-5 played with the University of Nebraska orchestra under Shipps's tutelage. Shipps invited MV-5 over to his house and served her several alcoholic drinks. MV-5 blacked out. Shipps took her to the basement and had sex with her. This was her first sexual experience. Shipps then employed MV-5 as a babysitter for his children, and continued to engage in sex with her.

When MV-6 was 16 years old, she studied under Shipps at the North Carolina School of the Arts. Shipps arranged for MV-6 to babysit his children, and eventually convinced her to engage in sex acts with

11

him. MV-6 was afraid that she would be thrown out of school if anyone discovered the sexual relationship. She took time off from college and struggled with depression for several years.

Shipps taught MV-7 violin at the North Carolina School of the Arts. When she was 17 years old, she stayed at Shipps's house over spring break. Shipps began a sexual relationship with her, and engaged in sex acts with her at his house and at his office for several months. At one point, Shipps sent MV-7 to Milwaukee for violin lessons with his friend. But when MV-7 arrived in Milwaukee, Shipps's friend gave her alcohol and chased her around the house. Shipps's friend took her shoes and clothes so that she could not run away, and he forced her to engage in sex. MV-7 believes that Shipps set up this arrangement, and knew what would happen. MV-7's friend and relative have submitted letters to the Court describing the impact that Shipps's abuse had on MV-7.

MV-8 played violin for Shipps in Nebraska and North Carolina. MV-8 babysat for Shipps children. One time, when Shipps drove her home, he asked for a kiss. MV-8 gave him a kiss on the cheek, but it didn't stop there. Shipps put her in similar situations with more frequency, and they became more physical. When she was only 15 or 16,

Shipps would touch her and tell her how "tragic" it was that he couldn't have sex with her. He provided her with marijuana and alcohol at parties he hosted in his home. By the time she was 18, Shipps was engaging in sex with MV-8. As an adult, MV-8 realized that Shipps had groomed her and taken advantage of her.

MV-9 also babysat Shipps' children and studied with him in North Carolina. She was only 17 when Shipps started touching and kissing her after rehearsals and demanding that she touch him as well. The touching became so regular, MV-9 grew to expect it as a part of their lessons. For a brief time, MV-9 stayed with Shipps. He invited her into his bed and tried to have sex with her, but she refused and stayed in her room for the next 24 hours. MV-9 was put in similar situations more than once, often with alcohol involved. Despite being told no, Shipps kept trying to force MV-9 to have sex with him.

### D. Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment

The seriousness of Shipps's crimes cannot be overstated. Shipps inflicted extensive emotional harm upon MV-1 and other teenage girls that stayed with them for the rest of their lives. He stole MV-1's adolescence, and the adolescence of his other victims.

13

In 2002, Shipps violated federal law by transporting MV-1 out of the state of Michigan with the intent that they engage in criminal sexual activity. In 2003, Congress added a five-year mandatory minimum to the statute at issue—18 U.S.C. § 2423(a). A few years later, in 2006, Congress amended the law again, raising the mandatory minimum to 10 years.

But in 2002, there was no mandatory minimum. As a result, the Court can sentence Shipps to any sentence that it deems to be "sufficient, but not greater than necessary" to accomplish the objectives of 18 U.S.C. § 3553(a). The government respectfully submits that a significant sentence at the upper end of the guideline range agreed to by the parties is appropriate here. A 68-month sentence would provide just punishment.

## IV. <u>CONCLUSION</u>

For the reasons stated above, a 68-month sentence is the appropriate sentence for Stephen Shipps.

                                      Respectfully submitted,

                                      DAWN N. ISON
                                      U.S. Attorney

*/s Sara D. Woodward*
SARA D. WOODWARD
MICHAEL EL-ZEIN
Assistant United States Attorneys
211 W. Fort Street, Suite 2001
Detroit, MI 48226
Phone: 313-226-9180
E-Mail: sara.woodward@usdoj.gov

April 11, 2022

## **CERTIFICATE OF SERVICE**

I here certify that on April 11, 2022, I filed under seal the foregoing document with the Clerk of the Court and emailed the document to the following:

John Shea
Attorney for Defendant

/s Sara D. Woodward
SARA D. WOODWARD
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
(313) 226-9810
sara.woodward@usdoj.gov

April 11, 2022